Pg. 1

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS SAN ANTONIO DIVISION

**FILED**

SEP 2 7 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

Rick Benavides,

    Movant,

v.

United States of America,

    Respondant.

Civil No. :
Crim No. 5:19-cr-00152-XR

## Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentance by a Person in Federal Custody

Comes Movant, Rick Benavides ("Benavides"), appearing pro se, and in support of this motion would show as follows:

## I. Jurisdiction

Benavides is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). Jurisdiction is vested in this District Court that presided over and imposed

Sentence pursuant to Rule 4(a) of the Rules
Governing § 2255 Proceedings. See Liteky v.
United States, 510 U.S. 540, 562 (1994).

Pg 3.

## II. Statement of the Case

Military agents of the Air Force Office of Special Investigations (AFOSI) at Joint Base Lackland in San Antonio launched an internet sting operation using the social media site Whisper on February 11, 2019. The military agents did not have a target in mind or any specific threat they were addressing. Major David Drake, commander of the investigative unit that ran the Whisper sting operation, admitted that he was not aware of a single case during his time at Lackland of an adult approaching a minor about sex. ROA.642-43; ROA.661-62. Nonetheless, the unit's concept of base safety led it to believe the operation was justified. ROA.644.

The unit chose Whisper because that service has a geolocator function that shows how close the responder is to the whisperer. The unit thought that feature was useful to the goal of keeping the base safe. ROA.654-58; ROA.673. Whisper, Major Drake explained, is anonymous, and one cannot tell, apart from location, whether things appearing on Whisper are true or accurate, as indeed the post his unit posted was untrue. ROA.649-53; ROA.653. Major Drake explained that his role in the operation was to make sure the elements necessary to make a were developed. ROA.645.

USAF Special Agent Technical Sergeant Jason Hutchings's role was to play a character on Whisper and to tell a story that might catch someone up.

Pg. 4

On February 11, Sgt. Hutchings, posing as a teenage girl who was visiting her brother at Lackland, put out a "whisper", a message, inviting people to "HMU", an abbreviation that means hit me up. ROA 673-78; ROA. 733-34; ROA. 770-71; ROA. 943. A user with the name of Man of Solitude responded to the whisper and the two chatted for a while, with Man of Solitude later introducing himself as Rick. ROA 676-86; ROA. 943-53. The chat involved talk about the reasons the Sgt. Hutchings persona was "visiting" San Antonio - her brother's graduation from Air Force training - her family, the weather, and what things the persona might do or see while visiting San Antonio as a tourist. Benavides also mentioned that he worked on the base as a contractor. ROA 676-86; ROA. 943-53. USAF Agent Sgt. Hutchings eventually suggested that the two switch the conversation from Whisper to texting. ROA. 686-87; ROA. 737; ROA 953.

Benavides texted the number USAF Agent Sgt. Hutchings provided. ROA. 685-86; ROA. 954. Twice, over the next week, Benavides stopped texting, once for over 28 hours and once for 48 hours. ROA. 741-42; ROA. 752-753; ROA. 956; ROA. 972. Each time, Sgt. Hutchings restarted the text conversation, ROA. 741-742; ROA. 752-753, even though he admitted that, as late as the night befor Benavides was arrested, no explicit suggestion had been made by Benavides. ROA. 755. Sgt. Hutchings acknowledged he did not want his role-playing to end with

Pg. 5

him empty-handed. ROA. 756-757; see also ROA. 761; ROA. 765.

On the eighth day, USAF Agent Sgt. Hutchings used his persona to push for a meet-up. He texted that his character did "not date boys my age" and had "b4" dated boys a few years older. ROA. 705; ROA. 979. Sgt. Hutchings also asked Benavides "What time do u get off". ROA. 705; ROA. 979. When Benavides, who in the whisper chat the first day had said he was 45, asked whether the persona dated "like 19-25", Sgt. Hutchings replied "What are ur plans tonight?". ROA. 705; ROA. 951; ROA. 980. After that, the conversation turned towards the possibility that the two could meet, though Benavides admitted "[Li]t kind of scares me hanging out with some one so young but plenty to show you. ROA. 708; ROA. 982.

Benavides suggested that they could go downtown during the day and see the Alamo or go to the zoo or "anything you want to do here". ROA. 708-09; ROA. 984. USAF Agent Sgt. Hutchings replied "Already seen the Alamo. Don't want to be a tourist". ROA. 709; ROA. 984. Benavides asked for time to "brainstorm". Sgt. Hutchings called that "Lame but okay", befor asking Benavides where he lived and how far away his house was. ROA. 709; ROA. 984. The conversation then took a suggestive turn and Benavides, after recieving a kissy-face emoji from Sgt. Hutchings, said "Tomorrow then" and told Sgt. Hutchings

Pg. 6

to "message me when you're ready". ROA. 709;
ROA. 985.

The two discussed what they might do, with
USAF Agent Sgt. Hutchings rejecting bowling and
Benavides eventually mentioning drinks and "You
know adult stuff", before saying "But we can't.
So I didn't mention anything". ROA. 710-711;
ROA. 987-88. Sgt. Hutchings told Benavides not to
be "like the boys at my school" by "playing games".
ROA. 711-12; ROA. 989. Benavides asked "what do you
want". ROA. 712; ROA. 989. He expressed fear
because of their age difference and mentioned
laws against them being together. ROA. 712-13; ROA.
989-91. He asked whether ~~Hutchings~~ Sgt.
Hutchings would send a naked photograph;
Sgt. Hutchings declined. ROA. 713-14; ROA. 992.
Benavides said it would be his "greatest fantasy
to be with such a young woman. That's the truth.
I would never have thought us just chatting
would even lead to this". ROA. 714; ROA. 993.
Sgt. Hutchings asked "Have you ever been with
my age?". ROA. 713; ROA. 993. Benavides answered
"Never all above 18". ROA 714; ROA. 759-60; ROA. 993.

The two texted some more before Benavides
signed off by saying he would take time from work
the next day to meet up. ROA. 994-99. The next
day around lunchtime Benavides texted saying
his work had been busy. He said he was on his
way to lunch and made a reference to oral

Pg. 7

sex. ROA. 723; ROA. 1001-06. They then texted throughout the afternoon before agreeing to meet in Lion's Park on the base. ROA. 723-32; ROA. 1006-21. When Benavides, who worked in IT on the base and had a base access card, arrived at the rendezvous site he was arrested. ROA. 646; ROA. 732; ROA. 772-76; ROA. 788-89. The arresting agents seized Benavides's cell phone, as well as SIM cards that he was carrying. ROA. 789-90; ROA. 804-05; see also ROA. 1035-42.

Benavides was charged with attempting to entice a minor in prohibited sexual activity, in violation of 18 U.S.C. § 2422(b). ROA. 48-49; see also Texas Penal Code § 22.011(a)(2). He pleaded not guilty.

Benavides filed a ~~motion~~ motion to suppress the evidence which the court heard on October 8, 2020. See United States v. Benavides, 2020 U.S. Dist. LEXIS 186944 (5th Cir. 2020).

Benavides went to trial on the charges against him. The two main witnesse at trial were USAF Agent Sgt. Hutchings and AFOSI computer forensics examiner Thomas Brandal. A significant part of the trial consisted of Sgt. Hutchings and the prosecutor reading the Whisper and text chats that had occurred between Sgt. Hutchings and Benavides. ROA. 680-732. Sgt. Hutchings also explained his thoughts about the investigation. see ROA. 680-732.

~~Bran~~ AFOSI ~~comput~~ computer forensics examiner Brandal testified that he had examined

Pg. 8

the data contained on the cell phone and SIM cards of seized from Benavides. ROA. 819-25. He explained that, when a device uses an application, a "footprint" is created that shows the action, such as sending a text or taking a photo, that occurred. ROA. 821-26. Brandal's examination found the text messages that Benavides's phone had exchanged with the USAF Agent Sgt. Huchings's persona. ROA. 828-30.

AFOSI Brandal did find a Whisper conversation from February 20, 2019, between Man of Solitude and a user going by the name King the King. ROA. 831-32. Over objection, he was allowed to put the substance of that conversation in as testimony and as an exhibit. ROA. 831. In the conversation, which occured in the evening of February 20, Man of Solitude said "Hey I reset my Whisper so I hope it works now". ROA. 832. He then asked "Did I embarras myself with my videos?". ROA. 833, befor saying "[E]ven if I did and you don't feel the same, I like talking to you". ROA. 833. "I just got [t]o work. I'm not sure if I'm going to hea[r] from you, but the picture you showed me last night are, ah" followed by a happy face. ROA. 833. Later he asked "Did I gross you out? Did that change?". ROA. 834. He then asked added, "I loved sharing it with you. I know you're in class, so just chat at me whenever". ROA. 834. AFOSI Brandal, in what he thought was the contacts section of the App found King the King listed as

Pg 9

15 and female. ROA. 834-36. Benavides objected
to this testimony and supporting exhibit, Government's
Exhibit 13. ROA. 835. Those objections were
overruled. ~~Brandal was also~~ AFOSI Brandal ~~was
also~~ admitted that he had no way of Knowing
whether the information in what he thought was a
contacts section was accurate. ROA. 836.

AFOSI Brandal was also allowed to testify
over objections that, on Benavides's phone, he found
11 video files of a man masturbating. ROA. 836-
38. The files had been on a Western Digital cloud
storage site and were pulled down from that
spot beginning at 11:46 pm. San Antonio time
on February 19. ROA. 840. The "creation" date
on the videos on the phone was February 19 and
20, but AFOSI Brandal explained that the
creation date does not mean an image was
created on the particular device. It means only
that was the date the image was put on the
device. ROA. 848-50.

In fact, AFOSI Brandal was sure that neither
the masturbation videos nor the photographs had
been created on the phone seized from Benavides.
ROA. 849-50. He knew this because the video had
been created on an iphone. ROA. 844. AFOSI
Brandal testified that he had found a contact page
that said "RAB's iphone", which he "figured"
meant Rick Benavides. ROA. 844. The Government
played a portion of one of the masturbation

Pg 10

videos for the jury. ROA. 840.

AFOSI Brandal was also allowed to testify about photos of female genitalia found on Benavides's phone. ROA. 840-841. Those photos were also shown to the jury. ROA. 842. AFOSI Brandal testified that the photos were not created on Benavides's Samsung phone, but appeared to have been screen shots taken from Whisper and Snapchat. ROA. 850-55. He admitted that he could not say that the photographs were sent by King the King. ROA. 851-52.

Benavides moved for a judgment of acquittal at the end of the Government's case. ROA. 858. The district court denied that motion. ROA. 858.

The district court instructed the jury on the defense of entrapment. ROA. 882. In closing argument, defense counsel went over the initiation of the investigation and the way that USAF Agent Sgt. Hutchings had repeatedly re-begun the text conversation and had pushed for something to occur. ROA. 876-98. The jury found Benavides guilty as charged. ROA. 343.

A probation officer then prepared a presentence report that found Benavides's base offense level to be 28. ROA. 1298; see U.S.S.G. § 2G1.3(a)(3). The officer recommended a two-level increase because the officer thought that a note found on Benavides's phone indicated that Benavides had engaged in a pattern of

Pg 11

prohibited sexual conduct. The note described a supposed sexual encounter with the teenage daughter of "my best friend", someone the author had helped with his computer. ROA.1298; see U.S.S.G. §4B1.5 (b)(1).

Benavides objected to the proposed five-level §4B1.5 (b)(1) increase. ROA.1239-42. He argued that there was no evidence that he had created the note, that there was no evidence to show how the note got on the phone, and that there was no evidence to show that the person who wrote the note was describing a real event, as opposed to an imagined scenario. ROA.1239-40. Benavides objected to the probation officer's assumptions that the note was written by Benavides and that it described real events. ROA.1240. He pointed out that investigators had contacted people who knew Benavides and that no evidence of such action had been discovered. ROA.1241-42.

The probation officer recommended the objection be overruled on the basis that the note was on Benavides's phone and it was written in the first person. ROA.1306. Benavides renewed his objection at sentencing. ROA.919-21. As defense counsel put it, "So we don't know when it was made. We don't know who made it". ROA.920. Counsel observed that the note ~~reffered~~ refereed to the daughter of "my best friend", but the government introduced no evidence that Benavides had a

Pg 12

best friend, let alone one with a daughter of the
relevant age. ROA. 920-21. The district court
found that location of the note in Benavides's
phone indicated it was his. It did not make
any finding as to the substance of the note and
it did not address the objection that no evidence
supported a finding that the note was about a
real event. ROA. 924-25. The district court
sentenced Benavides to a 168-month
imprisonment term. ROA. 932-33; see
also ROA. 373.

## III. Statements of the Grounds for Relief and Arguments

In September of 2019 a new counsil was assigned to movants Movant and counsil met face to face to discuss the case at hand and how the operation that led to his arrest had also led to several other arrests by OSI's sting operation from 2015 to 2019. The Movant had been incarcerated in a federal holding facility for several months to which he was housed with some, but not all, who had also been arrested by OSI's sting operation.

During that initial conversation the Movant laid out issues that had arose in the other cases and provided information to counsil as well as requested information to expand defense options for proper due process. From September 2019 through October 2020 counsil failed to do any pre-investigation with the limited discovery shown to Movant. Counsil also failed to request a forensic expert to counter OSI's claim of a picture and masturbation videos that were part of discovery. Counsil failed to request an expert knowledgeable on military/DoD laws or Constitutional to counter OSI's experts

claims that their actions were constetutional or legally authorised, even when evidence in the case showed otherwise. Counsil failed to request a psychologist to counter OSI's execution of ICAC methods used in conflict with ICAC's requirments and documentation to prevent entrapment.

The Movant provided several key issues and cases brought befor the courts from similar cases that focused on constitutional violations caused by Posse Commitatus by the military.

1. "The en ~~Hane~~ banc court could not conclude that the investigation had a legitimate indipendent military purpose because the methodology employed so clearly violated Department of Defense and Naval policy, as well as the boundry Congress imposed through the PCA and U.S.C. §375. The en banc court observed that the agent's testemony illustrates that the violations likely resulted from institutional confusion about the scope and contours of the PCA and PCA-like restrictions. ~~(U.S. Courts of Appeals~~ (United States v. Dreyer, 804 F. 3d 1266, U.S. Court of Appeals 9th Cir.)

2. "PCA does not apply under the facts presented here because at the time he investigated defendant Gentles, Agent Logan <u>was not acting under the auspices of the Military</u>..."

"... because Agent Logan was attending the training program in connection with his job as an NCIS Special Agent. However, Agent Logan's interactions with Defendant and subsequent interactions with local law enforcement all <u>occured under the auspices of ICAC; they did not occur under the auspices of the military or NCIS</u>..."
(U.S v. Gentles, U.S. Dist 8ᵗʰ Cir Lexis 21831)

3. "The court having already held that on unauthorized actions by the military officer can be "unreasonable" under the fourth amendment even though the same thing, if done by a civilian official, would not".
(Bissonette v. Haig, 776 F.2d 1384, U.S. Court of Appeals 8ᵗʰ Cir.)

4. "... here Congress authorised the DoD's involvement in certain prosecutions along the U.S.-Mexico international border under the National Defense

Authorization Act for the Fiscal year 2016".
(U.S. v. Hernandez-Garcia, 2020 U.S.
Dist Lexis 40607, 2020 WL 1083427,
9th Cir.)

These cases were crucial to Movants
Motion to Suppress defense which in U.S. v.
Smith Motion to Suppress, even within the
5th District of San Antonio, the court made
statements of possible PCA violations on pages
16 through 18. One year later on October 10th,
2020 Movant had a motion to suppress where
counsil had only reviewed and focused on
U.S. v. Dryer, 804 F.3d 1266, 9th Cir. with
no other cases sited. Counsil never sought
an expert of Constitutional or Department
of Defense law to counter OSI's previous
claims that their actions were legally
authorized and within ICAC guidlines.
(Gomez v. Beto, 462 F.2d 596, 597 (5th
Cir 1972)), ("When a defense counsil fails
to investigate his clients only possible defense,
although requested by him to do so by him,
and fails to subpoena witnesses in support
of his defense, it can hardly be said that
the defendant has had the effective
assistance of counsil.") (Rogers v.
Israel, F.2d 1288 (7th Cir. 1984))

Movants Motion to Suppress was denied. An appeal was requested by Movant based on the Courts own statement. U.S. v. Benavides Motion to Suppress 19-CR-152-XR "... we'll just see where this goes. I mean, the Fifth Circut has never really given clear parameters about where posse comitatus violations stop and start, so we might as well just lay out all the facts here and then up stairs they get to decide whether I'm right or wrong, however I rule." to which if the 4-6 th amendmant violations or posse comitatus challanges would have prevailed there would have never been a trial or the Suppression of Evidence would have been granted, and the Governments evidence would not have been shown to the jury. The Movant asserts his counsil stated an appeal to the motion to suppress could only be done after a trial was concluded, an untrue fact and detrimental to Movants due process of effective counsil even if it was not known to the Movant at the time.

Due to the Covid-19 Pandemic no trials were being conducted from March 2020 through June 2021 in the 5 th Western District of Texas San Antonio Division. The Movant, during that time period, sent several letters to counsel

Pg 18

based on selective discovery provided by counsel, Movant's Motion to Suppress, and what limited case information Movant could discover of other OSI cases that were known. Movant repeatedly requested counsel to request Brady or Jenks motions of evidence not disclosed. Counsel's lack of reasonable actions, especially of those noted by Movant shows Counsel's ineffectiveness in providing a reasonable defense.

In May of 2021 Movant was brought befor the Court to announce trials would resume and a date was scheduled. Between May and June of 2021 Movant repeatedly asked Counsel to provide what had been asked between September 2020 and May 2021. Counsel provided one transcript (U.S. v. Smith Motion to Suppress) sixteen days befor trial, but provided nothing else nor had Counsel done any excolplatory pre-trial investigations of Movants requests such as found in other such cases that were similar, requesting experts to counter and impeach OSI testimony of the Motion to Suppress testimony or taking actions as simple as filing Brady or Jenks Motions of Governments evidence not disclosed in discovery.

With 10 days to trial Counsel spoke with Movant face to face to inform him that the

Pg 19

the Government earlier had approached him with
evidence that had not been previously disclosed. The
evidence, a digital note, would normally cause him
to delay the trial due to issues of non-disclosure;
however the Government agreed to exclude this
evidence and not to use it against the Movant in
order to keep the set trial date. The Movant agreed
to this with the conditional understanding that this
evidence could not be used against him and Counsel
concurred that it would be the case. The Movant
requested an update on the FOIA that was
mentioned in U.S. v. Smith Motion to Suppress
as well as all of the other issues not addressed in
previous letters. Counsel did not inform Movant of
of the defense stratagy he had chosen, despite
trial being ten (10) days away.

At trial Movant was unaware Counsel had no
experts set to testify while the Government
stated they had at least one forensics expert due
to the evidence they planned on showing, of which
Counsel was made aware. During the trial the
Government went against the agreement of the
exclusion of the digital note. This agreement was
declared in court by the Government, see trial
transcript page 15 "... but neither here nor there,
the Government, in order to move forward and
get this done, agreed to not go into or even

Pg 20

discuss...", yet repeatedly insisted on trying to use it if defense counsel tried to bring in entrapment or character testimony blocking Counsel's options as he was ineffective to argue the agreement made or the action itself was misconduct by the Government. (Washington v. Hofbauer, 228 F.3d 689, 695-97 (6th Cir. 2000) (trial counsel was ineffective when he failed to object to prosecutor's misconduct.))

During the sentencing phase the digital note was once again used to establish "a pattern" enhancement, another misconduct of the Governments agreement; if Counsel would have argued the misconduct, or for that matter stated during the face to face discussion that the digital note evidence would be used as an enhancement, the Movant would not have agreed to trial and taken a different action. (U.S. v. Ridge Way, 321 F.3d 512, 514 (5th Cir. 2003) abrogated on the grounds by U.S. v. Grammas, 376 F.3d 433 (5th Cir. 2004)(an attorney's failure to properly inform his client about his sentencing exposure may constitute ineffective assistance of counsel).

Appellate counsel was assigned December of 2021. Counsel never contacted Movant who had been expecting a discussion of appellate

defense based on multiple objections and errors made in Movant's Motion to Suppress and trial regaurding constitutional violations. Movant never had the opportunity to discuss the Movant's Motion to Suppress and the fourth amendment violations asascerbated by PCA violations which show prejudice by the cases brought to trial counsel by Movant (U.S. v. Dryer, U.S. v. Gentles, and Bissonette v. Haig). Movant was unaware who his appellate council was until May of 2022 when he recieved a brief that was submitted on his behalf. Movant repeatedly tried to reach out to the appellant counsel by sending letters as appellant counsel only suplied a mailing address. Appellant counsel responded by mail, but offered no phone number or to speak over the phone. Movant repeatedly corresponded by mail until he was able to get Counsel to set up a non-private attorney to client phone call with a BOP employee present to monitor, limiting the discussion. When the Movant and Counsel spoke, Counsel stated the brief had been submitted and it was too late to withdraw or change the brief. The brief failed to address any of the noted objections in the District court that were recognized in the

Pg 22

Motion to Suppress and trial. Counsel's answer was that if the brief failed then the Movant could always file an ineffective assistance claim. Movant cites Lockhart v. McCotter, 782 F.2d 1275, 1283 (5th Cir. 1986) (Failure to present non-frivolous Fourth Amendment issue on appeal was deficient performance but no prejudice).

Movant has asserted in his §2255 that he is illiterate in the law as he has no law degree and with todays laws and lack of an updated law library or even legal advise of counsel he may fail to raise or cite critical requirments. For this reason the Movant defers to Doe v. Ortiz, Lexis 9977 that "Courts must liberally construe pleadings that are pro se. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d. 251 (1976)). Thus "a pro se complaint, however inartfully pleaded, must be held to "less stringant standards than formal pleadings drafted by lawyers." Id (internal quotations marks omitted), "Court personnel reviewing pro se pleadings are charged with the responsability of deciphering why the submission was filed, what the litigant is seeking, and what claim she may be making." See Higgs v. AG of the United States, 655 F.3d

333, 339-40 (3d Cir. 2011)".

U.S. District Court
Western District of TX
262 West Nueva St Rm 1-400

Bastrop FCI
Benavides #26644480
PO Box 1010
Bastrop, TX 78602



⇔46959-380⇔
District Court - Clerk
Room 1-400
262 W Nueva
SAN Antonio, TX 78207
United States

RECEIVED

SEP 27 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

CR-2